## TENDLER v. TENDLER (two cases).

(Court of Appeals of District of Columbia. Submitted March 4, 1926. Decided May 3, 1926.)

Nos. 4364, 4365.

1. Marriage ⬤⟞50(1).

Evidence *held* insufficient to show a lawful marriage, either under statutes or at common law.

2. Divorce ⬤⟞221—Defendant husband, in divorce action procuring annulment of marriage, held properly required to pay wife's attorney's fees (Code, § 975).

In wife's action for limited divorce, where husband's plea for annulment of marriage was granted, court, under Code, § 975, *held* authorized to require husband to pay reasonable attorney's fees for wife.

Appeals from the Supreme Court of the District of Columbia.

Suit for divorce by Kate Tendler against Morris Tendler, wherein defendant filed cross-bill, praying annulment of marriage. From a decree dismissing plaintiff's bill, and for defendant on cross-bill, but requiring him to pay plaintiff attorney's fees, both parties appeal. Affirmed.

Abe Shefferman, M. H. Aronson, and Samuel Shapiro, all of Washington, D. C., for Kate Tendler.

E. H. Jackson, of Washington, D. C., for Morris Tendler.

Before MARTIN, Chief Justice, VAN ORSDEL, Associate Justice, and BARBER, Judge of the United States Court of Customs Appeals.

MARTIN, Chief Justice. The appellant, Kate Tendler, as plaintiff, filed a bill of complaint in the lower court against Morris Tendler, as defendant, claiming that she was the lawful wife of defendant, and praying for a limited divorce from him upon the ground of cruelty. She alleged that in the year 1910 she and the defendant were united in marriage in the District of Columbia, under a regularly issued marriage license, and with a marriage ceremony performed by a rabbi, who was fully authorized so to act; that no children were born of the marriage; that at the time of her marriage to defendant one Morris Friedman, who was her first husband, was living in this country, but she believed in good faith that she had been legally divorced from him in accordance with the customs of the Jewish religion in Russia, and that she informed the defendant of these facts at the time of their marriage; that afterwards, to wit, on May 28, 1916, her former husband died, and the defendant was thereupon informed of that fact; that afterwards plaintiff and defendant continuously lived together as husband and wife, and publicly held each other out and treated each other as such, by declarations, admissions, and conduct, and were generally reputed to be husband and wife among their friends, relatives, and others who came in contact with them; that this course of life and conduct continued, as before, from the time of her first husband's death until January, 1921, when the defendant cruelly abused and mistreated her, and refused to supply her with food and clothing, although he knew her to be penniless. She therefore prayed for a limited divorce, with alimony, including suit money.

The defendant denied that he was informed or knew, at the time when he married plaintiff, that she had a former husband then living, or that he was informed or knew of the death of the former husband at any time before the commencement of this litigation, and denied that plaintiff was ever divorced from her first husband, or ever in good faith believed that there was such a divorce between them. He denied that he had ever lived with plaintiff after the death of her first husband, with any knowledge or intent upon his part to contract a common-law marriage with her, and also denied the charges of

cruelty preferred by plaintiff. He prayed that the marriage between himself and plaintiff should be annulled.

At the trial of the case it was stipulated as part of the evidence that the parties were married on October 27, 1910, at the District of Columbia, with a lawful license and ceremony; that at the time of this marriage plaintiff was the wife of said Morris Friedman, to whom she had been lawfully married in 1904, while a resident of Russia; that at the time when plaintiff and defendant were married, on October 27, 1910, the plaintiff was still the lawful wife of said Morris Friedman, who was then living in the city of Philadelphia; that said Friedman died at Philadelphia on May 28, 1916; and that after his .death plaintiff and defendant continued to live together until January, 1923, since which time they have not lived together, nor occupied the same house. It may be noted that this stipulation contains no statement relative to the alleged divorce which plaintiff claimed to have procured from her first husband, but concedes that at the time of her marriage with defendant she was still the lawful wife of the former husband. Nor does the stipulation include any statement concerning the defendant's alleged knowledge of the first marriage, or of the death of the first husband at Philadelphia in the year 1916.

At the trial of the case testimony was introduced in behalf of the plaintiff in support of her claim that, soon after she learned of the death of her first husband in the year 1916, she informed the defendant of that fact, and that they continued to live together as husband and wife, unfil some years afterwards, when he closed his home to her and refused to admit her therein. On the other hand, the defendant as a witness testified that he was not informed of the death of plaintiff's first husband, as claimed by plaintiff, and that he never lived with her as husband and wife after the time when he later learned of that fact.

The lower court thereupon dismissed plaintiff's bill and supplemental bill, on the ground that upon the evidence plaintiff was never the lawful wife of the defendant, and the court by its decree annulled the alleged marriage between the plaintiff and defendant, upon the ground that the allegations of the defendant's amended answer and cross-bill had been established, and that under the evidence the relations existing between the parties after the death of the first husband did not constitute a valid marriage between them. The court further decreed that de-

fendant should pay the sum of $250 to plaintiff's counsel for their professional services in the cause rendered. The plaintiff thereupon appealed from the decree dismissing her bill and annulling the alleged marriage ·between herself and defendant, and the defendant appealed from that part of the decree requiring him to pay the sum of $250 to plaintiff's counsel as aforesaid.

[1, 2] We do not find it necessary in this case to consider the general subject of common-law marriages in the District of Columbia, for the reason that the evidence contained in the record justifies the conclusion that there was not a lawful marriage between the parties, whether it be claimed under the statutes or at common law. We hold, moreover, that the lower court was authorized by the provisions of section 975, D. C. Code, to require the defendant to pay a reasonable counsel fee to plaintiff's counsel for their services rendered in the cause, and that the amount allowed by the court shows no abuse of discretion in that regard.

We therefore affirm the decree of the lower court in the several appeals, to wit 4364 and 4365, with costs of appeal assessed in appeal No. 4365 against the appellant.